1895, as a reform statute." See, also, Neece v. State, 62 Tex.Cr.R. 378, 137 S. W. 919.

Giving effect to the holding in the cases mentioned, we are constrained to hold that the indictment is not sufficient to authorize the enhanced penalty assessed herein.

The judgment is reversed and the cause remanded.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

GRAVES, J., absent.

**SCOTT et al. v. McKIBBAN et al.**

No. 1701.

Court of Civil Appeals of Texas. Eastland.
Oct. 22, 1937.

Rehearing Denied Nov. 19, 1937.

**FUNDERBURK, Justice.**

A purported will of J. E. Adison, deceased, naming Mrs. R. L. Scott as executrix, was on application of Mrs. Scott admitted to probate in the county court. Mrs. Ida B. McKibban, a contestant, appealed to the district court. Upon a jury trial in the district court, judgment was rendered denying probate of the will, from which the proponent, Mrs. R. L. Scott, has appealed. Probate of the will was contested by Mrs. McKibban on two grounds—mental incapacity and undue influence. No issue on the ground of undue influence was submitted to the jury (nor established by uncontroverted evidence), and hence that ground of contest being waived, the judgment rests alone upon the finding of mental incapacity of the testator.

For convenience, Mrs. Scott will sometimes be referred to as proponent, Mrs. McKibban as contestant, and said J. E. Adison as decedent.

Based upon an assignment of error alleging in effect that the court erred in refusing to give a requested peremptory instruction in favor of proponent, the proposition is urged by her that the evidence was "wholly insufficient to authorize or justify the verdict of the jury to the effect that J. E. Adison was of unsound mind at the time he executed the will; and wholly insufficient on which to base the judgment denying the probate of the will." The assignment of error presents only a question of *no evidence,* as contradistinguished from a question (technically) of *insufficient evidence* to raise an issue of fact regarding the mental incapacity of the testator. Hall Music Co. v. Robertson, 117 Tex. 261, 1 S. W.2d 857.

We are of opinion that there was some evidence consisting largely of inconclusive circumstances in themselves but altogether requiring submission of the issue to the jury.

The court, over objection by the proponent, introduced three checks signed by the decedent for the purpose only of comparison with his signature to the will. The checks were dated October 26, 1927, December 28, 1928, and May 31, 1934, respectively, and the will was dated December 18, 1935. The objections stated were "that the signatures on the checks offered were immaterial, irrelevant and inadmissible, there being no question about the signature either to the checks or to

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellants.

Smith & Eplen, of Abilene, for appellees.

the will, and that the offering of extraneous signatures and instruments bearing extraneous signatures was inadmissible for the purpose of comparison; and further that said checks were too remote in point of time to be properly admissible for comparison." The proposition urged by proponent to support her contention that the court erred in admitting said checks asserts, among other things, that the purpose of their admission was "to impeach the signature of J. E. Adison to the will on the 18th day of December, 1935, and to show that he did not execute the will made on said date * * * and [said instrument] was not in fact the genuine will of J. E. Adison, deceased." The record does not support the contention, we think, that such was the purpose of the evidence. The execution of the instrument, as a genuine will, was not disputed save only as its legal effect might be avoided by showing (1) the lack of testamentary capacity, or (2) undue influence. Both these issues were joined by the pleadings. We have no doubt that if the checks were admissible upon one of the issues they were also admissible upon the other. No question of the propriety of their admission would be affected by the fact that only one of the two issues was submitted as the basis of the judgment. Jones v. Jones (Tex.Civ.App.) 82 S.W.2d 1035.

In so far as the contentions made by the proposition now considered are supported by the objections made to the admission of the checks, they are (1) that the checks were too remote in time from the making of the will; (2) the checks and signatures thereon related to matters entirely foreign to the execution of the will.

■ We are cited to no authority supporting either of these contentions. The authorities cited relate to actions wherein the genuineness of the signature to the instrument was involved. In Corpus Juris, it is said: "Where the signature of the testator to the will is in his natural hand in conformity with his normal hand writing, it is evidence of mental and physical soundness. If the testator's name is signed differently from his usual mode of writing it, such circumstance may be considered on the question of testamentary capacity." 68 C.J. 484, § 91.

■ There was no error, we think, in the action of the court in admitting the testimony of the witness Parker to the effect that about a year or two before said J. E. Adison quit working for the witness, "Adison said that Flay Gunn (proponent) had married a trifling, good-for-nothing man; that he, Adison, was tired of giving her money for her husband to spend. That he was never going to help her any more as long as she lived with her husband and that if she would quit him he would be willing to help her, and he wrote her a letter to that effect."

This testimony was admitted over the objection that it was hearsay and not relevant to any issue involved in the suit, and entirely too remote and far away from the time of making the will in controversy to have any bearing or effect upon the will. When issues of testamentary capacity or undue influence are involved, much of the necessary evidence to establish or rebut such issues may be circumstantial. We think the testimony was admissible.

■ For this same reason we think there was no error in permitting the same witness to testify that the decedent told him many times that he was going to give what he had to his niece, Mrs. McKibban, and did not remember that decedent ever said he was going to leave anything to any person other than Mrs. McKibban. In the text of Corpus Juris, it is said: "On the issue of testamentary capacity, evidence is admissible of the testator's declarations of his testamentary intentions prior or subsequent to the execution of the will. Evidence of declarations of the testator as to his testamentary intentions made before or after the date of the will is admissible to prove capacity or, in connection with other evidence of incapacity; such evidence is admissible to prove mental unsoundness to execute a will." 68 C.J. 468, § 75.

After the witness Parker had testified that J. E. Adison told him a year or two before Adison quit working for him that appellant had married a trifling, good-for-nothing man, and that Adison had told him he was tired of giving her money for her husband to spend and that he was never going to help her any more as long as she lived with her husband, and that if she would quit her husband he would be willing to help her, and that he (Adison) wrote her a letter to that effect, the proponent offered to testify as a witness that she had never at any time solicited money from decedent, either by way of gift or borrowing, and that deceased never wrote her such letter at any time as testified to by the witness Parker. The court, upon ob-

jection, excluded such testimony upon the sole ground that it was a transaction between the deceased and the witness and prohibited by article 3716 of the Statutes.

Complaint of the exclusion of this testimony upon said ground presents the most interesting, and generally important, question in this case.

Prior to 1871 three particular classes of persons, among possibly others, were incompetent to testify as witnesses in civil suits or actions. They were: (1) Negroes; (2) parties; and (3) persons interested. "At common law a party to an action was not a competent witness at the trial thereof." 70 C.J. p. 193, § 260; Kerr v. Cotton, 23 Tex. 411. "A person who, although not a party, was interested in the result of the action was also held incompetent." 70 C.J. p. 194, § 261; Osborn's Adm'x v. Cummings, 4 Tex. 10.

A statute enacted in 1871, provided in section 1 thereof: "That in the courts of this State there shall be no exclusion of any witness on account of color, nor in civil actions because he is a *party* to, or *interested* in, the issue tried." (Italics ours.) 6 Gammel's Laws, p. 1010. Section 2 of the same act declared: "In actions by or against executors, administrators or guardians in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court."

A mere reading of these two statutory provisions discloses an ambiguity in the use of the word *"party."* Was the word used in the sense of party to a civil action, or party to a transaction out of which an issue to be tried in such action arose? Otherwise stated: Did the words "a party to * * * the issue tried" mean the same as party to the action? This uncertainty was corrected in the 1879 revision of the statutes. R.S.1879, art. 2246, provided: "No person shall be incompetent to testify on account of color, nor because he is a *party to a suit or proceeding* or interested in the *issue tried*." (Italics ours.) That provision has remained unchanged through all subsequent revisions of the statutes, being now R.S. 1925, art. 3714. Two exceptions were made, one relating both to *parties* and *per-*

*sons interested,* while the other related only to parties. The first was R.S.1879, art. 2247, declaring the husband or wife of "a party to a suit or proceeding, or who is interested in the issue to be tried" incompetent to testify to confidential communications between such husband and wife. The other exception was article 2248 (an amendment of said section 2 of the original act of 1871 sometimes popularly called the Dead Man's Statute), declaring that: "In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent." Both these exceptions have also remained unchanged, being respectively R.S.1925, arts. 3715 and 3716.

It is perfectly obvious that article 3716 provides no exception to the competency of a witness who, though not a party to a suit or proceeding, is "interested in the issue tried." According to its terms, it does provide an exception only to *parties to a suit or proceeding.* Gilder v. City of Brenham, 67 Tex. 345, 3 S.W. 309; Gamble v. Butchee, 87 Tex. 643, 646, 30 S.W. 861, 862; Mitchell v. Deane (Tex.Com.App.) 10 S.W.2d 717, 718; Steffian, Executrix v. Milmo Nat. Bank, 69 Tex. 513, 519, 6 S.W. 823, 825; Davidson v. Gray (Tex. Civ.App.) 97 S.W.2d 488, 491; Shelley v. Nolen, 39 Tex.Civ.App. 307, 88 S.W. 524, 530; Ingersol v. McWillie, 9 Tex.Civ.App. 543, 30 S.W. 56, 59; Barnett v. Houston, 18 Tex.Civ.App. 134, 44 S.W. 689, 693; Mayfield v. Robinson, 22 Tex.Civ.App. 385, 55 S.W. 399, 401; Howard v. Galbraith (Tex.Civ.App.) 30 S.W. 689, 690; City of San Antonio v. Sullivan, 23 Tex.Civ.App. 69, 57 S.W. 42, 44; Lomax v. Marlow (Tex.Civ.App.) 38 S.W. 228; Dicken v. Cruse (Tex.Civ.App.) 176 S.W 655.

The conditions under which the exception provided in said article 3716 will operate to render a witness incompetent to testify in any civil action, suit, or proceeding may be stated as a series of propositions thus: (1) The witness must not have been called to testify by an opposite party; (2) the witness must be a party to

the action, suit or proceeding; (3) the action, suit, or proceeding must have, as a party to it, an executor, administrator, guardian, heir, or other legal representative of a decedent; (4) the subject-matter of the proposed testimony must relate to a transaction with, or statement by, a testator, intestate, or ward; (5) the issues to be tried in the action, suit, or proceeding must be such as to permit of a judgment being rendered for, or against, an executor, administrator, guardian, heir, or other legal representative of a decedent, *as such*. In support of the last proposition, see Wootters v. Hale, 83 Tex. 563, 19 S.W. 134; Harris v. Seinsheimer, 67 Tex. 356, 3 S.W. 307; Bush v. Barron, 78 Tex. 5, 14 S.W. 238; Wallace v. Stevens, 74 Tex. 559, 12 S.W. 283; Byrnes v. Curtin (Tex. Civ.App.) 208 S.W 405. If any one of these five conditions is absent, the exception does not apply and the witness is competent to testify so far as the question may be affected by said statute; even though all the other conditions are present.

In the instant case, eliminating possible questions about which it is believed there can be no reasonable grounds for a difference of opinion, we think it may be confidently said that if the testimony of Mrs. Scott was incompetent and its exclusion therefore proper, it was because of the existence of one or the other (or both) of two conditions, namely: (1) Mrs. Scott was a party to the action in the capacity of executrix of the estate of the decedent, or (2) Mrs. McKibban was a party in the capacity of heir of the decedent. Two questions are suggested as arising upon each of these two alternatives. Upon the first: (a) Was Mrs. Scott an executrix? (b) If so, was she a party to the action in her capacity as executrix? Upon the second: (a) Was Mrs. McKibban an heir of the decedent? And (2) if so, was she a party to the action in the capacity of such heir?

The action must be regarded as strictly one to probate the will. It was not an action of the character authorized by R.S. 1925, arts. 3433 to 3435, inclusive, which is authorized only after a will has been probated. Prather v. McClelland, 76 Tex. 574, 13 S.W. 543. The only parties *to the record* in any capacity were Mrs. Scott and Mrs. McKibban, each joined pro forma by her husband.

 We do not believe that Mrs. Scott was a party in the capacity of executrix.

It is true that because she was named executrix in the will she was authorized by a statute to make application to probate it. R.S.1925, art. 3339. But, unless and until the will was admitted to probate, she would not be an executrix in fact, and would, therefore, have no capacity to act as such. Roberts v. Stuart, 80 Tex. 379, 15 S.W. 1108; Robertson v. Nat. Spiritualists' Ass'n (Tex.Civ.App.) 25 S.W.2d 889; Warne v. Jackson (Tex.Civ.App.) 230 S. W. 242; Anderson v. Caulk (Tex.Civ. App.) 5 S.W.2d 816, 819; Williams v. Foster (Tex.Civ.App.) 229 S.W. 896; Ingersol v. McWillie, supra. In recognition of the fact that, pending a contest over probating a will, the executor named in the will is without capacity to act as representative of the estate, a statute provides for the appointment of a temporary administrator "until the termination of the contest and the appointment of an executor or administrator with full powers." R.S.1925, art. 3378.

 The probate of the will was in no manner dependent upon the validity of the particular provision naming Mrs. Scott as executrix. The facts required by statute to be proved in order to admit the will to probate do not include facts showing the eligibility of Mrs. Scott to qualify and serve as executrix. R.S.1925, art. 3348. If the purported will were admitted to probate, proponent was a devisee and legatee. Because as such she was named in the will and therefore a person interested in its probate, she had the same authority to apply for the probate as she had by virtue of being named as executrix. R.S.1925, art. 3339. In whatever capacity she made the application, it was equally proper, if not necessary, to allege the name and residence of the executor (executrix) named in the will, and if letters testamentary were desired to be issued to the applicant, to allege that the applicant was not disqualified by law from accepting same. R.S.1925, art. 3329. We think, however, that since Mrs. Scott in her application to probate the will did not allege facts to show that she was named in the will as a devisee or legatee, or showing any other interest entitling her to make the application, her application is rightly to be construed as having been made solely by virtue of her being named as executrix in the will. Does that make her a party in the capacity of executrix? As devisee and legatee she was undoubtedly more con-

cerned in the probate of the will than she was by the bare fact that, if the will were admitted to probate, she would, if not disqualified, have the right to be appointed and qualify as executrix. What was said by the court in Cox v. Paschal (Tex.Civ. App.) 54 S.W. 774, 775, of the proponent in that case is equally true of this. The court there said: "There exists no valid judgment appointing appellant as executor of the will in question. This is an effort by him [her] to be so appointed. The issue would appear to be one more particularly concerning him than one concerning the estate," etc. In no proper sense, we think, can Mrs. Scott be considered as a party to the action in the capacity of executrix. She could possess no such capacity to act until the will was admitted to probate, and not then until she had taken the requisite steps to qualify as such. In the application she does not purport to act in such capacity.

No recourse to the rule of strict construction would seem to be necessary to require the conclusion that Mrs. Scott at the time her competency as a witness was challenged was not a party to the action in the capacity of executrix. But, since if under the statute she was incompetent to testify it was by virtue of an exception to a general right given by law, the rule of strict construction applies. Newton v. Newton, 77 Tex. 508, 14 S.W. 157; Martin v. McAdams, 87 Tex. 225, 27 S.W. 255; Mitchell v. Deane (Tex.Com.App.) 10 S.W.2d 717; Lassiter v. Bouche (Tex.Com.App.) 14 S. W.2d 808; King v. King's Unknown Heirs (Tex.Com.App.) 34 S.W.2d 804.

The utmost extent that any judgment in the action could affect her would simply be, in case the judgment was against her, to determine that she as an individual was not a devisee or legatee and had no right to qualify and become executrix. If the judgment were for her, it would simply determine that she was a devisee and legatee and had the right thereafter by taking the steps necessary to qualify, to become executrix and be vested, among other things, with the capacity as a party to bring and defend actions as executrix.

Let us next turn our attention to the question of whether there were heirs as parties to the action, and whether, if so, they were parties in that capacity, so as to permit a judgment to be rendered for or against them as such. We may assume that Mrs. Scott, in no way related to the dece-

dent, was not an heir. Mrs. McKibban, in order to show an interest which would entitle her to contest the probate of the will, alleged that she was "a legatee under the will offered for probate; she was the chief beneficiary and sole executrix in the last legal will made by J. E. Adison, deceased, and *which is the will now legally entitled to probate,* instead of the one offered by the said Mrs. R. L. Scott in this proceeding; and in the absence of any will said Ida B. McKibban as a niece of said J. E. Adison *would be* one of his legal heirs and entitled to a portion of his estate." (Italics ours.)

 So far as disclosed by the record, decedent left no heirs. All parties to the action, in so far as the record discloses who were the parties thereto, contended, in effect, that the decedent was a testator and was not an intestate. The decedent disposed of all his property by one or the other of two wills. There was therefore no property to descend to those who in case he had died intestate would have been his heirs.

 By her pleadings contestant limited and specified the capacity in which she appeared as a party to contest the probate of the will. It was in the capacity of an individual being interested because she was named a devisee and legatee in the former will. The fact is deemed of no importance that, in the absence of any will, she would have been an heir. It may be regarded as settled by the decisions of the Supreme Court of this state that an heir, or one who under some circumstances would be an heir, is not rendered incompetent under the statute, when, though a party to an action, he is such only in the capacity of an individual, a devisee or a legatee, etc., and not in the capacity of an heir. Newton v. Newton, 77 Tex. 508, 14 S.W. 157; Wootters v. Hale, supra; Mitchell v. Mitchell, 80 Tex. 101, 15 S.W. 705; Garrett v. Garrett, 124 Tex. 330, 78 S.W.2d 157; Cook v. Baker (Tex.Com.App.) 45 S.W.2d 161; Wallace v. Stevens, supra; Bush v. Barron, supra.

It may be granted that if Mrs. McKibban was contesting the will in the capacity of an heir, Mrs. Scott being an opposite party not called by the former to testify would be incompetent. In the able brief filed by the appellee's attorneys, it seems to be the view that the question of Mrs. Scott's incapacity is concluded by the proposition that an action to probate a will is an action of the character to which article 3716 applies.

The authority principally relied upon is Leahy v. Timon, 110 Tex. 73, 215 S.W. 951. In that case the heirs who were held to be disqualified were the plaintiffs—parties to the suit. It seems to us it was never reasonably questionable that the actions to which article 3716 may apply would include an action to probate a will. However, that seems to be the principal question determined in Leahy v. Timon, supra. That was a case coming within the statute in two distinct ways, the possibility of which we have already mentioned. It was an action to annul a will already probated, and therefore probably brought under authority of said R.S.1925, arts. 3433–3435. The executor was therefore a party in his capacity as such. The heirs were parties in their capacity as such. In the instant case, there is no party in the capacity of executrix as such, nor in the capacity of an heir as such.

 The fact that an action to probate a will is an action in rem has no bearing, we think, upon any question concerning the applicability of article 3716. It is true that as an action in rem a proceeding, to probate a will, may bind heirs, if any. But it will also bind individuals, devisees and legatees, or even strangers. It binds them all alike. That fact alone, it seems to us, sufficiently demonstrates that heirs are not parties to such an action, unless, of course, in some way they make themselves parties.

 It is a mistake to assume that all persons who are bound by a judgment are parties to the suit or action in which the judgment is rendered. To so hold would be to abolish the distinction between parties to an action and persons not parties to an action but interested. That would be contrary to the plain provisions of the statutes, set out in the beginning of this discussion. It is a familiar principle that a judgment binds *privies,* and certainly under a liberal, to say nothing of a strict, construction of the exception, "privies" cannot be regarded as synonymous with "parties." There are exceptions to the rule that a judgment is binding only upon parties *and privies.* Certain of these exceptions are: (1) Judgments in rem; (2) of the fact of the rendition of the judgment and those legal consequences which result from that fact; (3) in the absence of fraud and collusion, the amount of indebtedness of a judgment debtor; (4) one who has contracted to be bound; (5)

an adjudication affecting the interest of the public as distinguished from private interest, this being conclusive on all citizens. 34 C.J. 1049, § 1483. In McCamant v. Roberts, 66 Tex. 260, 263, 1 S.W. 260, 261, the court, after discussing purposes for which judgments may, and may not, be admissible against others than parties and privies, said that they are not admissible "in the determination of matters of private right as against *strangers* to the proceedings in which they are rendered, *except* in those matters of a public nature in which the proceeding is termed *in rem,* and from *public consideration* held to be binding upon *all persons.*" (Italics ours.) In Masterson v. Harris, 107 Tex. 73, 174 S.W. 570, 573, Judge Phillips, speaking for the Supreme Court, said: "An action to probate a will is generally recognized as a proceeding in rem. The judgment of probate is therefore, as a rule, binding upon *all the world* until revoked or set aside. * * * The reason of the rule is that the issues in the proceeding are simply the competency of the testator to make a will, and whether the instrument propounded for probate is his will." Then follows this very significant statement: "The judgment is not *for or against any person,* but determines the status of the subject-matter of the proceeding; and, when it duly establishes the instrument as the will, it is conclusive upon everybody." (Italics ours.) If a judgment probating a will binds everybody—parties, privies, and strangers alike—how can it be said that the action will permit of a judgment for or against heirs *as such?* Since R.S.1925, art. 3714, completely removed the disqualification of witnesses because of interest, except to the limited extent provided in article 3716, not here involved, and article 3716 applies only to parties and makes a partial exception as to parties only, we see no escape from the proposition that it can have no application to witnesses, even though they be bound by the judgment, unless they be so bound as *parties to the action.* Newton v. Newton, supra.

 The issues were closely drawn, and we cannot say that the exclusion of the testimony in question was not reasonably calculated to prejudice the proponent. It must, therefore, be presumed to have done so.

For this error it is our conclusion that the judgment must be reversed and the cause remanded, which is accordingly so ordered.

## On Rehearing.

We have concluded that appellees' motion for rehearing should be overruled. In a separate motion we are requested, upon such contingency, to make additional findings and conclusions. The motion really seems to be a request that we pass upon three cross-assignments of error which were presented in appellees' brief, and which by oversight or impression that they were rendered immaterial by reason of the disposition of the case, we failed to discuss in the opinion.

The cross-assignments of error complain of the exclusion of three letters dated, respectively, September 17, 1935, November 4, 1919, and November 22, 1919, written by J. E. Adison, deceased, to appellee Mrs. L. T. McKibban. The first letter informed the addressee that the writer had been sick about fourteen months, had had an operation from which he had never recovered, and by reason of which · he never expected to be as' strong again as before; stated he had $9,500 left, his operation had cost him $1,600, and asking for news. The second letter expressed the desire of the writer to hear from his niece for the reason that 'he realized the fact that he was getting a little old, had some property he would like to will to her at his death. The third letter contained a short list of personal and real property and to advise the writer's niece of the receipt of her letter, of his desire to keep in touch with her, and stating that he had filed a will with his other papers, making her his executrix, and advising her to keep the letter and the list, etc.

The first letter was excluded upon objection that it was "immaterial, threw no light on the case and had no bearing on the case whatever." The second was excluded upon the objection that it was "immaterial, threw no light on the case, and had no bearing on the case whatever, and was too remote." The objection to the third letter was on the same ground as the objections to the second letter. · All the letters were intended to show a long-continued, fixed intention of the deceased to devise his property to appellee.

 In our opinion these letters were admissible in evidence as against the objections made, and the court erred in excluding them. These cross-assignments of error were expressly urged; not for the purpose of reversing the judgment, but for the purpose, as stated, of investing the appellate court with full power to grant appellee all the relief to which she would be entitled on appeal to the end that the judgment of · the district court may be affirmed.

We have, therefore, expressed the above conclusions in the light of another trial.

The motion for rehearing is overruled.